UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RASHID BROWN,

    Plaintiff,

v.                                                    Case No. 2:05-cv-68
                                                           HON. ROBERT HOLMES BELL

S. ANDREWS, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Rashid Brown, an inmate currently confined at the Alger Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants S. Andrews, and D. McBurney.

Plaintiff's complaint alleges that he received a notice of mail rejection on February 11, 2004. The rejection was for an "FHM" calendar, because the calendar was bound with staples which violates policy. The calendar apparently was provided free with a subscription to FHM magazine. An administrative hearing regarding the matter was held on February 19, 2004. The rejection was upheld and plaintiff received notice that his mail would be held until he exhausted the grievance procedures. Plaintiff would then have 30 days to do something with the calendar or it would be destroyed. Plaintiff filed grievances which were denied.

Plaintiff alleges that he sent a letter on April 6, 2004, to have the calendar sent back to FHM with a letter asking FHM to remove the staples and return the calendar to plaintiff. On April 7, 2004, defendant Andrews returned plaintiff's letter indicating that she would not do anything until plaintiff's pending grievance was resolved. Plaintiff sent the mail room a kite asking that his

mail be processed because he had legal documents to mail after his nonlegal mail was processed. Plaintiff alleges that on April 8, 2004, after he had a conversation with defendant McBurney, McBurney took the letter, disbursement and copy of the exhausted grievance to give to defendant Andrews. Plaintiff asserts that on April 12, 2004, he asked defendant McBurney to check plaintiff's mail and to have three first class letters processed. Plaintiff had not received a receipt for the letter and calendar. Plaintiff again asked defendant McBurney about not receiving the receipt on April 13, 2004. Defendant McBurney allegedly stated that he would check into the matter. Plaintiff also gave defendant McBurney legal mail that needed to be sent to meet a deadline.

On April 14, 2004, plaintiff received a notice from defendant Andrews indicating that if plaintiff did not have sufficient funds to send the calendar out by April 22, 2004, it would be destroyed. Plaintiff states that he had $2.22 in his account which should have been enough to cover postage. Finally, plaintiff alleges that he did not get his U.S. Weekly magazine one week and on May 17, 2004, he received a U.S. Weekly magazine that was defaced with markers. Plaintiff seeks compensatory damages of $26,000 against each defendant and punitive damages.

Plaintiff alleges that defendant Andrews retaliated against him for filing grievances by giving him a 30 day notice instead of 90 days to exhaust his appeal of an administrative remedy, by trying to destroy the calendar before exhaustion of grievance remedies on March 19, 2004, and by not sending the calendar out of the facility on April 14, 2004. Plaintiff alleges that defendant Andrews then held his U.S. Weekly magazine for two weeks then defaced the cover and placed a "bullseye on an African-American in the middle of his forehead" solely because of plaintiff's grievances. Plaintiff alleges that defendants Andrews and McBurney conspired together to deny plaintiff his first amendment right to send the calendar back to FHM magazine. Plaintiff asserts that as a result of defendant Andrews' conduct, he was intimidated to not renew his subscription to U.S.

Weekly. Plaintiff alleges disparate treatment because white prisoners did not have their magazines defaced in a threatening manner. Plaintiff has shown that at least one other prisoner did receive the FHM calendar with staples. Plaintiff has attached that calendar as an exhibit to his response brief.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue

of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that after defendant Andrews rejected the FHM calendar, plaintiff filed a grievance on the issue. Plaintiff asserts that as a result of the grievance, defendant Andrews retaliated against him by trying to destroy the calendar before the grievance process was finished and then after the grievance process was finished by not immediately sending the calendar back to FHM magazine so that FHM magazine employees could remove the staples and send the calendar back to plaintiff. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff filed a grievance regarding the confiscation of the FHM calendar. Plaintiff complains that he was retaliated against when he received notice that the calendar would be destroyed. However, plaintiff concedes that the calendar was not immediately destroyed. Plaintiff does assert that defendant Andrews failed to immediately send the calendar out of the facility as requested by plaintiff. Defendant Andrews has explained that she has no knowledge when plaintiff received his third step grievance response, whether plaintiff was on the "indigent list," the content of conversations that plaintiff had with defendant McBurney, or the amount of money plaintiff had

available in his prison account. Defendant Andrews received notice from the Business Accounting Office on April 14, 2004, that plaintiff had insufficient funds to send the calendar out of the facility.

In the opinion of the undersigned, defendant Andrews' actions were not adverse conduct for purposes of supporting a retaliation claim. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Defendant Andrews' actions regarding the notification that the calendar would be destroyed and any alleged delay in sending the calendar back to the publisher is not the type of conduct, in the opinion of the undersigned, that would deter a person of ordinary firmness from filing grievances or complaints in the future. The actions of defendant Andrews, in performing the functions of her job, were simply too insignificant to support a claim of retaliation. Plaintiff was not going to get the calendar back. That was established when his grievance was upheld. Plaintiff's assertion that these insignificant actions were adverse or somehow related to his grievance filings is not supported by the record. Moreover, as to plaintiff's claim that defendant Andrews was involved in delaying his U.S. Weekly subscription or by defacing his U.S. Weekly magazine, plaintiff's claims are speculative. Plaintiff has come forward with no evidence showing that defendant Andrews had any involvement in defacing or delaying plaintiff's U.S. Weekly magazines.

Similarly, plaintiff cannot show that the failure to send the calendar back to FHM magazine violated his First Amendment rights. The prison has the right to restrict access to mail when it is reasonably related to legitimate penological needs. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). Bound calendars are considered contraband by prison policy. It appears that defendants attempted to send the calendar out of the prison after plaintiff

provided documentation that he received a Step III grievance response. However, according to the Business Office, plaintiff did not have sufficient funds in his prison account to send the calendar back to the publisher. Plaintiff was then notified that the calendar would be destroyed if he could not provide sufficient funds to send the calendar out of the prison. In the opinion of the undersigned, under these circumstances, defendants did not violate plaintiff's First Amendment rights.

Plaintiff alleges that defendants violated his equal protection rights because white prisoners were able to receive the FHM calendar with staples and because plaintiff's U.S. Weekly magazine was defaced in a racial manner. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff alleges that he was intentionally treated differently than white prisoners who received the calendars. The policy clearly prohibits inmates from possessing bound calendars. Plaintiff has pointed to at least one instance where a white prisoner allegedly received a bound calendar. Plaintiff has not established that defendants were involved in allowing, in violation of the rules, that prisoner or any other prisoner to have the calendar. Moreover, the fact that one prisoner has been able to circumvent the rules and possess a bound calendar does not establish that defendants violated plaintiff's equal protection rights. In the opinion of the undersigned, plaintiff cannot support his equal protection claim.

Similarly, plaintiff cannot establish that defendants conspired against him to deprive him a copy of the FHM calendar or to deface his U.S. Weekly magazine. In order to state a claim

of civil conspiracy under 42 U.S.C. § 1985, a plaintiff must establish (1) a conspiracy involving two or more persons, (2) for the purpose of depriving a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen.  A plaintiff must also show some racial or other class-based invidiously discriminatory animus behind the conspirators' actions. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998); *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992); *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992).  Plaintiff has failed to show that defendants acted in concert or that defendants deprived him of his constitutional rights.

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known;  finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established.

*Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Plaintiff has failed to show that defendants violated his clearly established rights involving possession of a bound calendar and sending the calendar outside the prison. In the opinion of the undersigned, defendants are entitled to qualified immunity from liability.

Accordingly, it is recommended that defendants' Motion for Summary Judgment (Docket #21) be granted and that this case be dismissed in its entirety. It is further recommended that plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment and for Discovery (Docket #38) be denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                                   /s/ Timothy P. Greeley  
                                                  TIMOTHY P. GREELEY  
                                                  UNITED STATES MAGISTRATE JUDGE

Dated:   February 14, 2006